# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## Virginia-Tennessee Motor Truck Corporation v. Curtis Wilson.

September 18, 1924.

Absent, Campbell, J.

1. Malicious Prosecution—*Instructions—Duty of Defendant to Know the Law—Guilt or Innocence of Plaintiff—Advice of Counsel—Probable Cause—Case at Bar.*—In the instant case, an action for malicious prosecution, the case was presented to the jury through the instructions and a verbal statement of· the court during the argument of counsel upon the theory that the defendant was "bound to know the law," without any qualification; that the law was that the plaintiff was innocent of the offense charged in the warrant sworn out by the defendant, because, not having agreed in writing to the reservation of title by defendant of the automobile which he was charged with selling, he could not be guilty of violating the statute in question under which the warrant was issued, and defendant was "bound to know" this; hence the case was to be decided upon the assumption that the defendant, at the time the warrant was sworn out, knew that he did not have probable cause to believe the plaintiff guilty.

   *Held:* Error, as the law is settled that where a defendant acts in good faith upon the advice of reputable counsel, after full disclosure of the facts, he is considered to have had probable cause although the advice of counsel may be wrong and he will not be liable in damages; and the error was accentuated in the instant case by the refusal of the court to instruct that the guilt or innocence of the plaintiff cut no figure in the present suit.

2. Instructions—*Conflicting Instructions—Reversible Error.*—Conflicting instructions calculated to mislead the jury constitute reversible error.

3. Malicious Prosecution—*Guilt or Innocence of Plaintiff of the Charge made Against Him.*—In an action of malicious prosecution the guilt or innocence of a plaintiff of the charge upon which the prior proceedings was founded, is not an issue before the jury. The question is whether the proceedings were malicious and without probable cause.

4. MALICIOUS PROSECUTION—*Malice—Want of Probable Cause—Inference.*— Both malice and the want of probable cause must concur and be proved. Malice may be inferred from the want of probable cause, but the latter can never be inferred from the plainest malice.

5. MALICIOUS PROSECUTION—*Probable Cause—Use of Prosecution to Coerce.— Payment of Debt.*—If probable cause exists at the time of the alleged prosecution and false arrest, the prosecutor cannot be held liable therefor in damages, although his sole actual motive may have been that of coercing the payment of a debt, or other improper motive; for evidence of improper motive is material only as showing malice.

6. MALICIOUS PROSECUTION—*Probable Cause—Duty of Defendant to Institute the Criminal Prosecution.*—In an action for malicious prosecution it was error to instruct the jury that defendant did not have probable cause to institute and maintain the prosecution unless its sole motive in doing so was the reasonable belief that it was its duty to institute and maintain the criminal prosecution complained of.

7. MALICIOUS PROSECUTION—*Probable Cause—Public Duty.*—It is not the law that only those who prosecute a charge or crime as a public duty, can excuse themselves from liability in damages to the person prosecuted; that, if they be actuated by any impure motive, such as actual malice, they will be liable in damages, even though "probable cause" for the prosecution existed.

8. MALICIOUS PROSECUTION—*Instructions.*—In the instant case, an action for malicious prosecution, the Supreme Court of Appeals examined and found no error in a number of instructions given by the lower court at the request of the plaintiff, on "the advice of counsel," reputation of the plaintiff, responsibility of principal for acts of agent, "probable cause," "malice," damages, credibility of witnesses, weight of testimony and the fraudulent sale or pledge of the property of another.

9. MALICIOUS PROSECUTION—*Probable Cause—Time of Existence of Probable Cause—Case at Bar.*—In an action for malicious prosecution it was not error to refuse an instruction limiting the inquiry as to the existence of probable cause to the single point of time at which the warrant was issued; where the declaration and the evidence embraced the arrest and prosecution at a later time.

Error to a judgment of the Circuit Court of Washington county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed and new trial awarded.*

This is an action brought by the defendant in error (hereinafter called plaintiff), against the plaintiff in error (hereinafter called defendant), to recover damages for alleged malicious prosecution and false imprisonment, as charged in two counts of the declaration.

There was a trial by jury which resulted in a verdict in favor of the plaintiff against the defendant for $1,000.00; the judgment under review was entered in accordance with the verdict; and the defendant brings error.

The prosecution in question was instituted by the following warrant sworn out by J. D. Faust, the president of the defendant, and the plaintiff was arrested thereunder, as appears from the return of the officer endorsed thereon:

"Virginia

"City of Bristol:

"To any lawful officer of said city.

"Whereas, J. D. Faust has this day made complaint and information on oath before me, Bolling H. Handy, police justice of said city, that Curtis Wilson did on the ......... day of ..........................., 1923, unlawfully and feloniously sell one automobile, of the value of $300.00, the title to which being in writing agreed by the defendant. was in the Virginia-Tennessee Motor Truck Corporation in Bristol, Virginia.

"These are, therefore, in the name of the Commonwealth of Virginia, to command you forthwith to apprehend and bring before me the body of the said Curtis Wilson to answer to said complaint, and be further dealt with according to law, and you are also directed to summon.......................................... as witnesses.

"Given under my hand this 9th day of February, 1923.

"Bolling H. Handy,

"Police Justice.

"(Endorsed on back).

"Executed by arresting Curtis Wilson and bringing him before Bolling H. Handy, police justice, for trial.

"This 12th day of February, 1923.

"Newton, Policeman."

Upon the hearing on this warrant, the police justice sent the case on to the grand jury and the Commonwealth's attorney prepared an indictment charging the plaintiff with larceny of the automobile presently to be mentioned, valuing it at $300.00, constituting an indictment for grand larceny, which is a felony; but the grand jury did not find a true bill and the prosecution there ended.

The action of the court with respect to instructions was as follows:

At the request of the plaintiff the court gave the following instructions:

"The court instructs the jury that the burden of proof is upon the defendant to prove that he sought counsel with an honest purpose to be informed as to the law, and that he was in good faith guided by such advice in causing the arrest of the plaintiff, and that whether or not the defendant did, before instituting the criminal proceedings, make a full, correct and honest disclosure to his attorney or attorneys of all the material facts bearing upon the guilt of the plaintiff, of which he had knowledge, and whether in commencing such proceeding the defendant was acting in good faith upon the advice of his counsel are questions of

fact to be determined by the jury, from all the evidence and circumstances proved in the case. And if the jury believe, from the evidence, that the defendant did not make a full, correct and honest disclosure of all such facts to his counsel, but that he instituted the criminal prosecution from a fixed determination of his own, rather than from the opinion of counsel, then such advice can avail nothing in this suit.

"2. If the jury believe, from the evidence, that the plaintiff, up to the time of his arrest, uniformly bore a good reputation for honesty and integrity, and that the defendant knew his reputation to be such up to the time of his arrest, then that fact is a proper one to be considered by the jury, in connection with all the other evidence in the case, in determining whether or not the defendant had probable cause to believe, and did believe, in good faith, that the plaintiff was guilty of the crime charged against him.

"3. The court instructs the jury that the Virginia-Tennessee Motor Company in this case is responsible for the acts of its agent.

"4. The court instructs the jury that probable cause in a criminal prosecution is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.

"5. The court instructs the jury that malice may be inferred from the want of probable cause, but the latter can never be inferred from the plainest malice. The improper motive or want of a proper motive, inferrable from a wrongful act based on no reasonable ground, constitutes of itself all the malice deemed essential in law to the maintenance of an action for malicious prosecution.

"6. The jury are instructed that if, from the evidence and instructions of the court, you find for the plaintiff, then in assessing the amount of the plaintiff's damages you have a right to take into account, and the plaintiff is entitled to recover compensation for, his loss of time, and for his suffering both bodily and mental, including the injury to his reputation and feelings, if any, sustained by the wrongful act of the defendant, and if the jury believe the act complained of was committed with actual malice and a design to injure or oppress the plaintiff, the plaintiff may also recover punitive or exemplary damages, that is to say, the jury will not be limited to mere compensation for the actual damages sustained by him; they may give him such further damages as they may think right in view of all the circumstances proved at the trial as a punishment to the defendant and as a salutary example to others to deter them from offending in like manner.

"7. The court instructs the jury that the credibility of the witnesses is a question exclusively for the jury, and the law is that where a number of witnesses testify, directly opposite to each other, the jury is not bound to regard the weight of evidence as equally balanced. The jury have the right to determine, from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence or lack of intelligence, and from all the other surrounding circumstances appearing on the trial which witnesses are more worthy of credit, and to give credit accordingly.

"8. The court further tells the jury that, in determining the weight to be given to the testimony of different witnesses in this case, the jury are authorized to consider the relationship of the witnesses to the parties, if the same is proved; their interest, if any, in

the result of this case, their temper, feeling or bias, if any has been shown; their demeanor while testifying; their apparent intelligence, and their means of information; and to give such credit to the testimony of such witnesses as under all the circumstances such witness seems to be entitled to.

"9. The court instructs the jury that whenever any person is in possession of any personal property, in any capacity, the title or ownership of which he has agreed in writing shall be or remain in another, and such person so in possession shall fraudulently sell, pledge, pawn or remove from the premises where it has been agreed that the property shall remain, and refuse to disclose the location thereof, or otherwise dispose of the property without the written consent of the owner or the person in whom the title is, he shall be deemed guilty of the larceny thereof."

The defendant asked the court to instruct the jury as follows:

"A. The court instructs the jury that if an officer or officers of the defendant caused a warrant to be sworn out for the arrest of the plaintiff; that upon a hearing before the police justice of Bristol, Virginia, the case was sent on to the grand jury of Bristol, and that the grand jury failed to indict the plaintiff, then such proceedings make out a *prima facie* case of evidence of probable cause on the part of the defendant, and unless such *prima facie* evidence is overcome by the plaintiff, the jury must find for the defendant, regardless of the action of the grand jury.

"B. The court instructs the jury that before plaintiff is entitled to recover in this case, he must show, by a preponderance of the evidence, that the defendant, in having warrant issued against him, did not have probable cause for believing the plaintiff had com-

mitted a criminal offense, and further that defendant acted with malice toward the plaintiff.

"C. The court instructs the jury that 'probable cause' means that the defendant, or its officers who instituted the warrant, in good faith, being men of ordinary prudence, entertained the reasonable belief that the plaintiff had committed a criminal offense in disposing of the automobile in question, and their action must be judged from their standpoint and not from the standpoint of the plaintiff, and the existence of probable cause must, by the jury, be determined by the facts known to them and which induced them to have the warrant issued at the time, and not by facts developed on the trial before the police justice.

"E. If the jury believe from the evidence that, before issuing the warrant in question, any officer of the defendant sought the advice of a reputable attorney, and after making a full disclosure of all matters known to him concerning the actions of the plaintiff in disposing of the car in question, and the warrant in question was sworn out upon the advice of such attorney, then this constitutes 'probable cause' for issuing such warrant, and your verdict should be for the defendant.

"F. (As requested.) The court instructs the jury that the fact that the Bristol grand jury did not indict the plaintiff cannot be considered as evidence in this case except to show that the criminal prosecution is ended, *and that the guilt or innocence of the plaintiff of the charge made against him cuts no figure in the present suit and is immaterial.*" (Italics supplied.)

The court gave instructions A, B and E, as offered, refused C, as offered, and gave it in modified form as D, as follows:

"D. The court instructs the jury that on the question of probable cause, as defined in another instruction,

the facts and circumstances, knowledge and information, must be viewed from the standpoint of the defendant and not that of the plaintiff, *and if the defendants, being men of ordinary prudence, entertained the reasonable belief that it was their duty to institute and maintain the criminal proceedings complained of*, they cannot be held liable therefor." (Italics supplied.)

The court modified instruction F, as offered, and gave it as follows:

"F. (As given.) The court instructs the jury that the fact that the grand jury of the Corporation Court of the city of Bristol did not indict the plaintiff cannot be considered as evidence in this case except to show that the criminal prosecution is ended."

Further: The following also appears from the record:

"During the opening argument of plaintiff's counsel to the jury, using instruction No. 9 as a basis, he argued that, in having issued the criminal warrant in evidence, the defendants should have known, and was bound to know, the law, and that under the law the plaintiff could not have been guilty of violating the statute referred to in said instruction, for the reason that he had never signed his name to a reservation of title contract. Counsel for defendant who followed, in reply proceeded to argue that defendant did not have to know with certainty what the law is; that the contract did not have to be signed by plaintiff, but that he might adopt it as his own without signing it. Plaintiff's counsel objected to the argument, and the court stated, in the presence of the jury, that it did not agree with defendant's counsel, and that if such argument was pursued further the court would have to construe the statute for the jury."

The evidence and the facts as they appear there-from, so far as material upon the questions raised by the assignments of error based on the action of the trial court with respect to the instructions, are as follows:

J. D. Faust, a witness for the defendant, testified in part as follows:

"I am president of defendant company which is doing business in Bristol, Virginia, its business being the sale of automobiles and trucks in the section around Bristol.

"Some time in 1921 we sold J. C. Perry a used Buick automobile for $1,000.00, on which a part of the pur-chase price was paid and written reservation of title contract signed for the unpaid purchase price, which was docketed in Bristol, Virginia. This contract and note were left at the Wise county justice of the peace trial referred to and cannot for that reason be produced. Perry made payments aggregating $300.00, and some-time after the last payment was made by him he and the plaintiff came to my home in the evening and after Perry telephoned me, after I had left the office, and Perry stated Wilson would take over the said car and continue the payments which Perry had been making under the contract. Something was said about whether I would consent and I agreed that no new contract could or would be made, but that Wilson might step in the shoes of Perry and continue to make the payments called for by the contract. At the same time I asked Wilson to pay down the sum of $100.00 before consenting to Perry making sale to him and he gave me a check for $100.00 that evening and I con-sented that Perry turn over to him the car to which we had title, and it was understood that Wilson would

continue to make the regular monthly payments. Wilson later made payments aggregating $400.00.

"The next morning Wilson came to our office and wanted to see our records and check up what Perry had stated to him was due on the car, and we looked over together the written contract reserving title to the car.

"Wilson got behind with his payments and I went to see him on more than one occasion. Finally he told me, when asked where the car was, that he still had it and was operating it as a jitney. Continuing to be in default I later saw him again, asked about the whereabouts of the car, and he then told me he had sold it, and refused to tell me where it was. Still getting no payments I went to see G. M. Warren, a Bristol, Virginia, attorney, laid the facts as I knew them before him, told him of what took place at my house and that Wilson had simply taken over Perry's contract and in good faith enquired whether Wilson could be prosecuted criminally for disposing of the car under these circumstances. I was advised that, in Mr. Warren's opinion, he could be and he and I left his office together and went to the police justice and the warrant in question was issued at that time. I told Mr. Warren all I knew about the facts, including the things stated above, and acted on his advice. I did not tell Mr. Warren that I had sold the car to Wilson, as I had not. I did not tell anyone that I intended to send Wilson to the penitentiary if the debt was not paid. I did not tell his father on the day the grand jury met that his son had committed a penitentiary offense, by disposing of the car as he had done. I had the warrant issued on the advice of an attorney as stated above and because I thought it was my duty to prosecute a case of that sort.

"I have no bad feeling or ill will toward plaintiff and our company has all along given and yet gives the welding business to him and his folks."

The following named witnesses for the plaintiff, and the plaintiff himself, testified, in part, as follows:

"J. C. Perry.—In 1921 I purchased from defendant a used Buick automobile for $1,000.00 of which $200.00 was paid in cash and the balance payable at $20.00 a week under reservation of title contract. I kept it about five weeks and paid $100.00. One morning on my way to town I picked Wilson up on way to his work and we got to discussing the car and I told Wilson Mr. Faust wanted to sell it, and Wilson said he might buy it. I telephoned Mr. Faust at his residence and told him Wilson might buy the car and Faust said bring Wilson out. It was the defendant's car until paid for. He went to see Mr. Faust at his home one evening and Faust wanted Wilson to pay him $150.00 and keep up the payments which I had agreed to make. I think he got $150.00, I know he got something, and Wilson paid me $200.00 on what I had paid the defendant and gave Mr. Faust a check, he filling out both checks and Wilson signing them. There was no written contract between Mr. Faust or his company and Wilson. Wilson and me got in the car, and Wilson drove it off and I got out at Ninth street.

"After warrant was issued before the Bristol police justice against Curtis Wilson, and before the Wise county trial, Mr. Faust said to me if I did not go to Wise as a witness it would be better."

"Curtis Wilson.—I am the plaintiff in this case and was the defendant in the criminal warrant sworn out by Mr. Faust against me in Bristol, Virginia, police court. Perry and I went to Mr. Faust's home as he testified, then I wanted to buy the car from Perry,

after Perry had telephoned Faust and reported that Faust said to bring me out. Perry told me he owed Mr. Faust's company and Faust said Perry had been paying $20.00 a week on the car to the defendant. I bought the car and paid Mr. Faust $100.00 and Perry $200.00 on his contract, Mr. Faust filling in both checks that evening at his house. I owed $200.00 on the car when arrested. I sold it for $800.00 to R. E. Smith at Shell Creek, Tennessee, in November, he paying $300.00 down and agreeing to pay $50.00 a month. Afterwards I bought a 1919 Buick model for $400.00, which I considered a good buy, and owned it when arrested. I also owned a lot with my brother when arrested, and am able to pay now the amount which I owe the plaintiff, and expect to pay it. Mr. Faust saw me about what was due him and I offered to sell him the 1919 model Buick. He offered to take it and sell it and give me what it would bring, but I did not do this and no price was ever agreed upon.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"I did not tell Mr. Faust that I had not sold the Perry car. My last payment to Faust was about January or February. Faust offered to sell my second Buick and give me what he got out of it.

"I did not go to the defendant's office the next day after Perry and I went to Faust's residence."

"Charles E. Wilson.—I am the father of Curtis Wilson and am engaged with my son, Paul, in the acetylene welding business in Bristol, Virginia.

"Faust first mentioned the debt of Curtis to him in February, soon after the car was sold. I told him Curtis had another car and would sell it to him. Faust said on one occasion if I did not fix up the debt of Curtis he was going to prosecute him, and on the day the grand jury met at Bristol he told me he had a letter

from Potter and said I am going to send Curtis to penitentiary if you don't arrange this debt.

"I go to defendant's office once a month with bills for business which they give my place.

"Curtis and his brother sold the lot which they owned for $400.00."

\*     \*     \*     \*     \*     \*     \*     \*     \*

"Paul Wilson.—I am a brother of Curtis Wilson. Before Curtis was arrested Faust asked me where he was and made no threats against him at that time. The next time he mentioned it, said he was going to prosecute him if he did not pay the debt. Mr. Faust always paid our bills except on one occasion and then I went to see him. He said he would hold my bill against what Curtis owed him. He called Mr. Goodpasture and I told him, as I told Mr. Faust, that Curtis only worked for me and had no interest in the business, and Mr. Goodpasture said if that were true the bill should be paid and the next day Faust sent me a check.

Mr. Faust said to me that if Curtis did not pay him he was going to send him to the penitentiary and I told him to go ahead. The criminal warrant was issued immediately after this. Defendant could have made the debt off of Curtis as he owned a lot and a car."

*George M. Warren* and *D. T. Stant*, for the plaintiff in error.

*Hutton & Hutton* and *John T. DeHart*, for the defendant in error.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error,

which in our view are decisive of the case upon the appeal, will be disposed of in their order as stated below.

[1, 2] 1. Does it appear from the record that the trial court erred to the prejudice of the defendant in giving instruction 9 at the request of the plaintiff; in modifying instruction F, as asked by the defendant; and in giving instruction F as modified, thereby refusing to give the latter portion of instruction F, as asked for, which we have italicized in the statement preceding this opinion—when this action of the court is considered in the light of what appears from the record, touching the respective arguments of opposing counsel and the statement of the court before the jury?

The question must be answered in the affirmative.

The action of the court in question was, of course, not so intended; but it did in fact, allow the case to be presented to the jury upon the erroneous theory that the defendant "was bound to know the law," without any qualification; that the law was that the plaintiff was innocent of the offense charged in the warrant sworn out by the defendant, because, not having agreed in writing to the reservation of title, he could not have been guilty of violating the statute in question, under which the warrant was issued, and the defendant was "bound to know" this; hence, that the case was to be decided by the jury upon the assumption that the defendant, at the time the warrant was sworn out, knew that it did not have probable cause to believe the plaintiff guilty of the offense charged in the warrant, and so was liable in damages; whereas the law, as is well understood and as is uncontroverted before us, is settled to the contrary, namely, to the effect that where a defendant in such a case as this acts in good faith upon the advice of reputable counsel, given under the circumstances set out in instructions No. 1 and E, he is

not deemed to be bound to know the law, but will be considered to have had "probable cause" for his action, although the advice of counsel may be wrong, and he will not be liable in damages therefor.   Thus instruction 9 was, in effect, in conflict with instructions No. 1 and E, given as aforesaid; and certainly was more than probably misleading, in that it diverted the minds of the jury from considering the evidence in the light of instructions No. 1 and E.   And this effect of instruction No. 9 was accentuated by the absence of any instruction to the jury, such as would have been contained in the portion of instruction F, as asked, which was refused.

[3] In *Womack* v. *Circle*, 32 Gratt. (73 Va.) 324, at p. 33 } (an action for malicious prosecution), this is said: "It is not a question of the guilt or innocence of the plaintiff.   It is whether the proceedings were malicious and without probable cause."

In *Singer Mfg. Co.* v. *Bryant*, 105 Va. 403, 54 S. E. 320 (also a malicious prosecution case), the defendant asked for an instruction stating that "the question of guilt or innocence of (the plaintiff) of the charges set forth in the warrant is not in issue in this case."   The trial court refused this instruction and gave one in a modified form, in which the jury were told that the guilt or innocence of the plaintiff might be considered on the question of probable cause.   On the appeal this action was held to have been erroneous and the judgment of the trial court was reversed.

In *Southern Railway Co.* v. *Mosby*, 112 Va. 169, at p. 177, 70 S. E. 517, 519 (likewise a malicious prosecution case), this is said and held: "The court further told the jury, and rightly, that the question of guilt or innocence of the defendant in error was not an issue before them   *   *."

[4, 5] It is urged in behalf of the plaintiff that since the jury were warranted by the evidence in finding that the defendant used the prosecution in order to coerce the payment of a debt, that, in itself, shows that the prosecution was without probable cause—citing 14 Am. & Eng. Ency. of Law (1st ed.), p. 48, and cases cited in a footnote thereto. This authority does not sustain this position. An examination of it discloses that it deals with the subject of when malice may be implied in cases of actions for malicious prosecution, and goes to the extent of stating merely that "where criminal prosecutions are instituted not to vindicate the law and punish crime, but to coerce the payment of a debt or restitution of property, in such case the law conclusively presumes malice." And this authority adds this: "* * The jury * * are never warranted in finding want of probable cause from the existence of even express malice."

And such is the uniform holding in this State and elsewhere.

In *Scott* v. *Shelor*, 28 Gratt. (69 Va.) 891, this is held: "Both malice and the want of probable cause must concur and be proved. Malice may be inferred from the want of probable cause, but the latter can never be inferred from the plainest malice."

Indeed the authorities are all in accord in holding that if probable cause exists at the time of the alleged prosecution and false arrest, the prosecutor cannot be held liable therefor in damages, although his sole actual motive may have been that of coercing the payment of a debt, or other improper motive; for evidence of improper motive is material only as showing malice. *Spengler* v. *Davy*, 15 Gratt. (56 Va.), 381.

As said in *Wheeler* v. *Nesbitt*, 24 How. (U. S.) 544,

Va.-Tenn. M. T. Corp. *v.* Wilson, 140 Va. 260. 277

Opinion.

16 L. Ed. at p. 769: "Even proof of express malice was not enough without showing also the want of probable cause. * * It is true * * that want of probable cause is evidence of malice, * * but the converse of that proposition cannot be sustained; nothing will meet the exigencies of the case, so far as respects the allegation that probable cause is wanting, except proof of that fact." And on page 550 of 24 How., on page 768 of the same opinion, as reported in 16 L. Ed., this is said: "Malice alone is not sufficient to sustain the action, because a person actuated by the plainest malice may nevertheless prefer a well founded accusation and have a justifiable reason for prosecuting the charge."

In *Bartlett* v. *Brown*, 6 R. I. 37, 75 Am. Dec. 675, at p. 677, the case is said in the opinion to have been one which appeared to the defendant as "of apparent guilt of theft, believed by him to be real, and such will not support an action for malicious prosecution even though the most express malice be proved of the prosecutor."

Moreover, instruction 5, given in the instant case, so stated the law, and, hence, was in irreconcilable conflict with the action of the court in question.

[6] 2. Did the court err in giving instruction D, which, in the concluding portion of it, stated, in substance, that the defendants did not have "probable cause" to institute and maintain the prosecution unless its sole motive in doing so was the reasonable belief that it was their (its) duty to institute and maintain the criminal prosecution complained of.

The question must be answered in the affirmative.

[7] This instruction in substance states the law to be that only those who prosecute a charge of crime as a public duty, can excuse themselves from liability in damages to the person prosecuted; that if that be not

the character of the motive of the prosecution that if he be actuated by any impure motive, such as actual malice; he is liable in damages, even though "probable cause" for the prosecution, as such cause is legally defined, undoubtedly existed. As we have seen above, such position is untenable under the authorities.

It results from the above conclusions that the case will have to be reversed.

As this, however, is not a case in which we feel that we can enter a final judgment under the statute (Code section 6365), a new trial will have to be awarded. Since that is so, it will be necessary for us to pass upon the action of the court in giving and refusing other instructions besides those which we have passed upon above. The assignments of error with respect to such other instructions, however, present no novel question. Hence, in passing upon such other instructions, we deem it sufficient to say merely this:

[8, 9] We are of opinion that the court committed no error in giving instructions 1, 2, 3, 4, 5, 6, 7 and 8, at the request of the plaintiff, and no reversible error in refusing instruction 6, asked by the defendant, and in giving that part of instruction D in lieu thereof which is not italicized in the copy of it set out in the statement preceding this opinion.

If it had been properly phrased, the defendant would have been entitled to have had the latter part of instruction C given as an instruction, since it had reference to the point of time at which it was alone material to inquire what were the facts known to the defendant which tended to excite the belief in a reasonable mind that the plaintiff was guilty of the crime for which he was prosecuted. The instruction, as asked, however, limited the inquiry mentioned to the single point of time at which the warrant was issued; whereas

the declaration and the evidence embraced the arrest and prosecution at a later time, and hence was properly refused.

*Reversed and new trial awarded.*

West, J., dissenting:

I am unable to concur in the majority opinion by Judge Sims.

I do not think it reversible error to refuse to instruct the jury that the guilt or innocence of the plaintiff of the charge against him. cuts no figure in the case, where, as in the instant case, the jury is sufficiently informed of the law applicable to the case in the instructions given. I am satisfied that the jury were not misled by any of the instructions granted.

I think the evidence disclosed in the record warranted the jury in finding that the defendant, in issuing the warrant, did not have probable cause for believing the plaintiff had committed a criminal offense, and that the defendant acted with malice towards the plaintiff. In my view, the judgment should be affirmed.