# Richmond.

## Virginia Electric and Power Company v. T. J. Wynne.

### March 1, 1928.

1. STREET RAILWAYS—*Disorderly Conduct—Refusing to Pay Fare or Leave Car —Instructions—Appeal and Error—Harmless Error—Case at Bar.*—In the instant case, an action by a passenger against a street railway for false arrest and malicious prosecution, it was conceded that the conductor was by virtue of the statute a conservator of the peace, while upon the car of defendant in the discharge of his duties, and that if plaintiff unlawfully refused to pay his fare or leave the car when requested to do so by the conductor, then he was guilty of a breach of the peace, and liable to arrest for disorderly conduct.

   *Held:* That in view of this concession the failure of the trial court to instruct the jury to that effect was harmless.

2. STREET RAILWAYS—*Transfer Points—Right of Street Railway to Change Transfer Point Fixed by Ordinance.*—A city ordinance required a street railway company to issue and receive transfers at a certain point. The street railway, on account of congestion, at the solicitation of the police attempted to change this transfer point. An earlier ordinance gave the street railway company power to make and enforce reasonable regulations as to transfer tickets or systems of transfer to prevent fraud.

   *Held:* That the street railway company had no legal right to alter the transfer point fixed by the ordinance, as the right to establish rules and regulations as to transfers to prevent fraud did not confer upon the street railway power to amend or change an ordinance of the city.

3. STREET RAILWAYS—*Expulsion of Passenger—Rights of Carrier and Passenger.*—A regulation of a street car company requiring a passenger to produce a transfer ticket to his destination or pay his fare, under penalty of expulsion from the car, is a reasonable regulation and within the power of the carrier to make; but while a carrier may enforce this rule, it has no right to inflict wrongs and injuries upon a passenger in ejecting him from the car.

4. STREET RAILWAYS—*Expulsion of Passenger—Rights of Carrier and Passenger—Transfer Ticket as Evidence.*—As between the conductor of the street car and a passenger, the face of the passenger's transfer

ticket is conclusive evidence as to the extent of his right to ride, and it is the duty of a passenger on a street car, if he has not the required ticket or token evidencing his right to travel on that car, to pay his fare or quietly leave the car, when requested, and resort to his appropriate remedy for the damages he has sustained.

5. STREET RAILWAYS—*Expulsion of Passenger—Rights of Carrier and Passenger—Transfers—Case at Bar.*—The instant case was an action by plaintiff against a street railway for false arrest and malicious prosecution. Plaintiff held a transfer ticket which on its face gave him a right to transfer at the point he took the car. The transfer point was fixed by ordinance of the city but the street railway undertook to change the point.

*Held:* That the conductor had no right, acting upon secret instructions of defendant railroad, to require plaintiff to pay an extra fare or leave the car.

6. MALICIOUS PROSECUTION—*Definition of Probable Cause.*—No accurate definition can be given of probable cause, but belief in the charge, on facts, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence will suffice. The prosecutor must believe in the guilt of the accused, and there must be reasonable grounds on which to base the belief.

7. MALICIOUS PROSECUTION—*Probable Cause—Questions of Law and Fact.*—What constitutes probable cause is a question for the court, but where there is any conflict in the evidence it is for the jury to determine whether in the particular case such probable cause existed.

8. PROBABLE CAUSE—*Time—Test.*—The test of probable cause is to be applied as of the time when the action complained of was taken.

9. MALICIOUS PROSECUTION—*Probable Cause—Time—Case at Bar.*—In the instant case, an action for malicious prosecution by a passenger against a street railway, the conductor who made the arrest of plaintiff and instituted the prosecution did not arrive at his belief of the guilt of the plaintiff from the facts and circumstances that existed at the time when the arrest was made and the plaintiff sent to the police station for prosecution. His reaction to the facts was not reasonable and unprejudiced, but the result of previous instructions from the master. The defendant admitted that the prosecution was set on foot by it for the purpose of enforcing a regulation requiring passengers to transfer at another point than that fixed by the city ordinance.

*Held:* That the facts did not constitute probable cause for plaintiff's arrest.

10. STREET RAILWAYS—*Knowledge of Law—Ordinance under which Street Railway Operates.*—A street railroad company is conclusively presumed to know an ordinance of the city under and by virtue of which it exercised its franchise rights to operate its cars over and upon the streets of the city.

11. Malicious Prosecution—*Advice of Counsel—Advice After Arrest—Case at Bar.*—Advice of counsel is recognized everywhere as a good defense to the action for malicious prosecution. But in the instant case, an action by a passenger against a street railroad, the advice of counsel was never requested or sought prior to the arrest and imprisonment of the plaintiff, but the case was reported to the attorneys for the defendant afterwards in order that counsel might appear and prosecute the plaintiff.

    *Held:* That this was rather a ratification of the defendant of the conductor's tortious conduct in arresting plaintiff than a seeking advice of counsel about setting on foot the prosecution.

12. Corporations—*Exemplary Damages—Malice.*—A corporation cannot be held liable for punitive damages, the basis of which is malice expressed or implied, unless it previously authorized the act, or subsequently ratified it.

13. Malicious Prosecution—*Malice—Exemplary Damages—Corporations—Ratification—Case at Bar.*—In the instant case, an action by a passenger against a street railroad for false arrest and malicious prosecution, when the passenger was arrested by a conductor of defendant, defendant street railroad did authorize by its own admission the prosecution and ratified the prosecution with full knowledge of the facts by appearing in the police court by its regular attorney, where it sought the plaintiff's conviction.

    *Held:* That a verdict for exemplary damages was warranted.

14. Malicious Prosecution—*Malice—Probable Cause.*—In a legal sense any unlawful act done wilfully or purposely to the injury of another is as against that person malicious. Malice and want of probable cause must concur. Malice may be inferred from the want of probable cause, but the latter will not be inferred from the former.

15. Street Railways—*Malicious Prosecution—Arrest and Prosecution of Passenger Holding Transfer Ticket—Exemplary Damages—Case at Bar.*—The instant case was an action by a passenger of a street railway for false arrest and malicious prosecution. The plaintiff boarded defendant's car at a transfer point fixed by an ordinance of the city and presented a transfer ticket. The street railroad had changed the transfer point fixed by the ordinance and the conductor refused to accept the transfer ticket, and on the passenger's refusal to leave the car or pay his fare arrested him. In the police court the case against plaintiff was dismissed with a warning.

    *Held:* That the arrest and prosecution of plaintiff for so trivial cause was so harsh that the trial judge was right in instructing the jury that plaintiff was entitled not only to compensatory damages, but, as a matter of law, it could find punitive damages against the defendant, and the jury were fully warranted in so finding.

16. Malicious Prosecution—*Probable Cause—Malice—Exemplary Dam—*

*ages—Burden of Proof.*—In an action for malicious prosecution the burden is upon the plaintiff to establish want of probable cause and malice by evidence before he can recover punitive damages.

17. MALICIOUS PROSECUTION—*Street Railways—City Ordinance Requiring Transfers—Arrest of Passenger Holding Transfer—Case at Bar.*—The instant case was an action by a passenger against a street railway company for false arrest and malicious prosecution. A city ordinance required the street railway company to issue and receive transfers at a certain point. The street railway, on account of congestion, attempted to change this transfer point. Plaintiff presented a transfer at the original transfer point, which the conductor refused to receive, telling plaintiff he would have to get off or pay another fare. This plaintiff refused to do and the conductor who was a conservator of the peace arrested plaintiff and delivered him into the custody of a policeman, who sent him in a patrol wagon to a police station where he was locked up for thirty minutes and then released on bail. Upon a hearing in the police court the charge was dismissed with a warning to plaintiff. Defendant claimed that it was authorized to change the transfer point by an earlier ordinance giving it power to make and enforce any reasonable regulations as to transfer tickets or systems of transfer to prevent fraud.

*Held:* That a verdict and judgment in favor of plaintiff for exemplary damages would not be disturbed on appeal.

Error to a judgment of the Circuit Court of the city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*T. Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*John Hirschberg* and *McC. G. Finnigan,* for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

This is a writ of error to a final judgment entered by

the Circuit Court of the city of Richmond, in an action for false arrest and malicious prosecution, in which T. J. Wynne was plaintiff and the Virginia Electric and Power Company was defendant. The jury rendered a verdict of $2,000.00 for the plaintiff, a motion to set aside said verdict was overruled, and this judgment was entered thereon. The plaintiff and defendant in the trial court will, for convenience, be designated by the same terms in this opinion.

There are a number of conflicts in the record upon some of the facts in this case but these were for the determination of the jury—and having been solved in favor of the plaintiff by the verdict of the jury, the facts proven by the evidence for the plaintiff will have to be accepted by us as established.

Formerly there were several independent street car lines, operated under independent franchises, doing business in the city of Richmond. Now all of the street car lines, or certainly most all of them, are operated, owned and controlled by the defendant.

Upon May 15, 1908, an ordinance of the city council of Richmond was approved, known as the general transfer ordinance, which is still in full force and effect. Section 22, chapter 43, Richmond City Code, 1924. That ordinance required the various street railway companies to issue and receive transfers at intersecting points with other lines.

Subsection 16 of section 23, chapter 43 of the Richmond City Code, 1924, provides: "At the intersection of Fourteenth and Main streets  *  *  *  *  * the Richmond Passenger and Power Company shall issue transfers to passengers coming from the south on Fourteenth street  *  *  *  * to the Richmond Traction Company going west on Main street" (approved September 16, 1901). From that time until

sometime after the 23rd day of November, 1924,
Fourteenth and Main streets was the transfer point for
passengers coming from the south to Main street and
for passengers going south from Main street. The
Fourteenth street car came to Main street—stopped—
discharged its passengers—who transferred to the Main
street line—then returned south. This car was known
as a tripper car.

On account of the congestion at Main and Four-
teenth streets, after conference in March, 1924, between
the officials of the police department of the city of
Richmond and the superintendent of transportation
of the defendant, it was determined to abolish Main
and Fourteenth street as a transfer point for passengers
traveling on the Hull and Fourteenth street car going
west from South Richmond. This was to be accom-
plished by the Fourteenth street car instead of stopping
at the intersection with Main street as formerly and
transferring its passengers, it was to go up Main to
Ninth street, where the car diverged going to Broad
street, and at its point of divergence passengers from
South Richmond going west on Main street were
required to transfer under the new regulation of the
defendant. This car then went up Ninth to Broad—
west upon Broad to Seventh—and thence down Seventh
to Main—to the intersection at Fourteenth, where it
turned to South Richmond over Fourteenth and Hull
streets.

This change of the transfer point, it is claimed by the
defendant, was authorized by the ordinance approved
December 23, 1899, for the construction of a street
railway by the Richmond Passenger and Power Com-
pany in the city of Richmond, whereby it was given
power to make and enforce any reasonable regulations
as to transfer tickets or systems of transfer to prevent
fraud. This new regulation was posted by the defend-

ant in its car barn on the 23rd day of November, 1924, for information and instruction of its servants, and a short time before the acts complained of, in this action two inspectors—one in the morning and one in the afternoon—were stationed for a week at Main and Fourteenth streets to warn passengers going west not to transfer at that point, but at Main and Ninth streets.

About 7:30 A. M. on February 6, 1925, the plaintiff, a resident of the city of Richmond, boarded a north bound Hull street car, paid his fare, and requested and received a transfer from "south to west." When the car reached Fourteenth and Main streets the plaintiff, as was his custom, alighted, boarded the next west bound car along Main street, and tendered his transfer in payment of his fare which was refused by the conductor.

The conductor then told the plaintiff that he would have to pay another fare or get off the car. This the plaintiff refused to do. There was no loud talking or angry words used by either the plaintiff or conductor. The plaintiff remained upon the back platform of the car, and when it arrived at Tenth or Eleventh and Main streets, the conductor who was a conservator of the peace with power to arrest, arrested the plaintiff and delivered him into the custody of a policeman of the city of Richmond upon the charge of disorderly conduct. The policeman thereupon sent the plaintiff in a patrol wagon to the police station where the plaintiff was locked up for approximately thirty minutes, when he was released on bail.

After the plaintiff was bailed he went to the claim office of the defendant to ascertain why he had been arrested, and none of its employees would discuss the matter, but told him that he would be seen next morning at the police court. Next morning he appeared in

the police court when the defendant's attorney appeared and prosecuted him for disorderly conduct. Judge Ingram, after hearing the evidence, dismissed the case with warning to the plaintiff. Sometime after the trial, when the ordinances above mentioned were brought to the attention of Judge Ingram, he told counsel for the plaintiff that if he had known of said ordinances at the time of the trial he would have dismissed the plaintiff without admonition. This was admitted in evidence in lieu of Judge Ingram's personal appearance.

It appears from the record in this case that the ordinances of the city of Richmond in reference to the transfers (which are matters of evidence to be produced before the court) were unknown to either counsel for the plaintiff or defendant at the time of the trial in the police court, nor did counsel for the plaintiff know of said ordinances until the trial in the Law and Equity Court, part two, of the city of Richmond where he took a non-suit in a former action.

In its petition for this writ of error, the defendant sets out its assignment of error as follows: "The defendant maintains that the judgment of the trial court is contrary to the law and the evidence and without evidence to support it, and that the trial court erred to the prejudice of the defendant in its instructions to the jury; in submitting to the jury the question of the defendant's liability, without any evidence of a lack of probable cause or malice appearing in the record, and in allowing the award of punitive damages."

The defendant then cites the law with reference to the allegations and proof necessary to sustain an action for malicious prosecution, and cites numerous cases in Virginia that have approved and applied the principles of the quotation. There is no question of its

correctness, therefore discussion of it is entirely unnecessary.

In order to simplify the questions before the court, the defendant "admits (1) that the prosecution was set on foot by the now defendant, and that it has terminated in a manner not unfavorable to the now plaintiff; and (2) that it was instituted, or procured by the cooperation of the now defendant: but the defendant denies (3) that it was without probable cause, and (4) that it was malicious."

[1] It is a concession in the case that the conductor was by virtue of the statute a conservator of the peace, while upon the car of the defendant in discharge of his duties, and if the plaintiff unlawfully refused to pay his fare, or leave the car when requested so to do by the conductor, then and in that event he was guilty of a breach of the peace, and liable to arrest for disorderly conduct. *Virginia Railway and Power Company* v. *O'Flaherty*, 118 Va. 749, 88 S. E. 312, Ann. Cas. 1918D, 471. So that the failure or refusal of the trial court to instruct the jury to that effect, as requested by the defendant, if error was harmless and any discussion of the instructions or their correctness would be a work of supererogation.

[2] From the record in this case upon the trial thereof the defendant's defense was based largely upon its legal right by virtue of the franchise ordinance approved December 23, 1899, to change the transfer point for passengers on the Hull street car going west on Main street from Fourteenth and Main streets to the point of divergence at Main and Ninth streets, as set forth in the defendant's notice to its conductors and motormen dated the 23rd day of November, 1924. The plaintiff's entire case depended upon his claim that the defendant had no legal right to alter said transfer

point fixed by the ordinances of the city of Richmond. Thus a sharp legal issue was presented to the court, upon the correct decision of which the respective rights of the parties depended.

After the evidence was concluded the plaintiff presented to the court three instructions embodying his view of the law on this crucial point in the case, and the defendant tendered two instructions to the court of its view of the law. There is no objection to the form of the instructions, but merely the controverted proposition of law, so that it is unnecessary to copy said instructions herein or discuss them in detail upon this point. But the plaintiff's instructions as to the measure of damages therein contained will be considered in another part of this opinion. The learned judge of the trial court adopted the plaintiff's view of the law, and held that the defendant could not change the transfer point fixed by the city ordinances in its discretion or upon the suggestion or solicitation of the police department of the city. The right to establish rules and regulations to prevent fraud upon it in the use of transfers, does not confer any authority upon it to amend, change or abrogate the ordinances of the city council.

[3, 4] A regulation of a street car company requiring a passenger to produce a transfer ticket to his destination or pay his fare, under penalty of expulsion from the car, is a reasonable regulation and within the power of the carrier to make; but while a carrier may enforce this rule, it has no right to inflict wrongs and injuries upon a passenger in ejecting him from the car. As between the conductor of the street car and a passenger, the face of the passenger's transfer ticket is conclusive evidence as to the extent of his right to ride, and it is the duty of a passenger on a street car, if he has not

.the required ticket or token evidencing his right to travel on that car, to pay his fare or quietly leave the car, when requested, and resort to his appropriate remedy for the damages he has sustained. *Va. & Southwestern Railway Company* v. *Hill*, 105 Va. 729, 54 S. E. 872, 6 L. R. A. (N. S.) 899.

[5] In the case at bar the transfer ticket, by its terms upon its face, gave the plaintiff the right to transfer from the south at the intersection of the western line, and ride west. The conductor had no right acting upon secret instructions of the defendant to require him to pay an extra fare or leave the car.

[6] The chief ground of defense under the facts and circumstances of this case was "did the defendant act with probable cause, and without malice?" What is probable cause is thus stated in Burks Pl. and Prac. (2nd ed.), page 198, as deduced from the various decisions of the Supreme Court of Virginia: "No accurate definition can be given of probable cause, but belief in the charge, on facts, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence will suffice. The prosecutor must believe in the guilt of the accused, and there must be reasonable grounds on which to base the belief. Both must concur, at least many of the cases so hold, but upon this point there is some conflict.

[7, 8] "What constitutes probable cause is a question for the court, but where there is any conflict in the evidence it is for the jury to determine whether in the particular case such probable cause existed. The test of probable cause is to be applied as of the time when the action complained of was taken."

[9] Ours is a system of philosophical jurisprudence, and in order for a general rule to be applicable to a particular state of facts, the facts and circumstances

must bring the case within the reason and spirit of the rule. In the case at bar the conductor who made the arrest and instituted the prosecution did not arrive at his belief of the guilt of the plaintiff from the facts and circumstances that existed at the time when the arrest was made and the plaintiff sent to the police station for prosecution. His reaction to the facts was not reasonable and unprejudiced, but the result of previous instructions from the master. The defendant admits that the prosecution was set on foot by it. Its purpose was to enforce its regulation requiring passengers from the south going west to transfer at Main and Ninth instead of Main and Fourteenth streets as formerly, by police court proceedings.

[10] Nor does the rule that the defendant was bound to know the law, without any qualification apply—in this case as laid down in Virginia—*Tennessee Motor Truck Corporation* v. *Wilson*, 140 Va. 260, 124 S. E. 231. The law which the defendant was held bound to know was not the general law of the State, but the ordinances of the council of the city of Richmond under and by virtue of which the defendant exercised its franchise rights to operate its cars over and upon the streets of the city. The defendant is conclusively presumed to know said ordinances.

[11] Advice of counsel is recognized everywhere as a good defense to the action for malicious prosecution. But in this case the advice of counsel was never requested or sought prior to the arrest and imprisonment of the plaintiff, but the case was reported to the attorneys for the defendant afterwards in order that counsel might appear and prosecute the plaintiff as had been done in other cases. It was a ratification of the defendant of the conductor's tortious conduct rather than seeking advice about setting on foot the prosecution.

[12, 13] The defendant further claims that prosecution was without malice. It is true that a corporation cannot be held liable for punitive damages, the basis of which is malice, expressed or implied, unless it previously authorized the act, or subsequently ratified it. In the case under discussion the defendant did authorize by its own admission the prosecution and ratified the prosecution with full knowledge of the facts by appearing in the police court by its regular attorney, where it sought the plaintiff's conviction.

[14, 15] "In a legal sense any unlawful act done wilfully or purposely to the injury of another is as against that person malicious. Malice and want of probable cause must concur. Malice may be inferred from the want of probable cause, but the latter will not be inferred from the former." The arrest and prosecution of the plaintiff for so trivial cause was so harsh and out of proportion to the offense of which he was charged to be guilty, that the jury were fully warranted in its finding and assessing punitive damages against the defendant, and from the facts in this case the learned judge was right in instructing the jury that the plaintiff was entitled not only to compensatory damages, but as a matter of law it could find punitive damages against the defendant.

[16] Instructions numbers six, seven and eight and nine given for the plaintiff correctly stated the law of want of probable cause and malice, and that the burden of proof was upon the plaintiff to establish both facts by evidence before he could recover punitive damages. The only exception to the said instructions was that there was no evidence to warrant giving them. From the evidence set out in the opinion, the evidence was ample to justify said instructions.

The instructions asked by the defendant other than

those heretofore mentioned were based upon its theory of the case, that there was no evidence of lack of probable cause nor evidence of malice, and that the conductor acted in good faith and without ill will or malice, and as a person of ordinary prudence under the circumstances would have acted.   There was no difference of opinion between the learned counsel for the plaintiff and defendant as to the law upon those subjects, but whether there was evidence in the case to warrant its submission to the jury.   Hence no discussion of the instructions is necessary.

The trial court was right in refusing the defendant's instructions, as the evidence fully established the claim of the plaintiff.   The effect of its instructions in the form tendered to the court was practically a demurrer to the evidence and the court properly refused them.

[17] The verdict of the jury being fully sustained by the evidence, and there being no errors of law shown by the record, the judgment of the trial court is affirmed.

*Affirmed.*